UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **TARA MCLEOD**, an individual, and **WENDEE LOMELI**, an individual, | CIVIL ACTION |
| Plaintiffs, | Case No. 2:19-cv-266 |
| v. | Judge: |
| **FLORIDA CANCER SPECIALISTS, P.L.**, a Florida professional limited liability company, | Mag. Judge: |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COME** the Plaintiff, **TARA MCLEOD** ("McLeod") and **WENDEE LOMELI** ("Lomeli") (collectively "Plaintiffs"), by and through undersigned counsel, and state the following for their Complaint:

## CAUSES OF ACTION

1. This is an action brought under the Family & Medical Leave Act (FMLA) and Florida's Private Whistleblower Act (FWA), for (1) interference in violation of the FMLA, (2) retaliation in violation of the FMLA, and (3) retaliation in violation of the PWA.

## PARTIES

2. Plaintiff, **TARA MCLEOD** ("MCLEOD") is an individual and a resident of Florida who currently resides, and at all material times resided, in Lee County, Florida. **MCLEOD** was employed by the Defendant.

1

3.      Plaintiff, **WENDEE LOMELI** ("**LOMELI**") is an individual and a resident of Florida who currently resides, and at all material times resided, in Lee County, Florida. **LOMELI** was employed by the Defendant.

4.      Defendant, **FLORIDA CANCER SPECIALISTS, P.L.** ("**FCS**") is a Florida professional limited liability company with a principal place of business located in Fort Myers, Florida. **FCS** employed **MCLEOD**.

5.      At all material times, **FCS** employed greater than fifty (50) employees.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction of this matter under 28 U.S.C. §1331.

7.      Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiffs reside in Lee County, Florida and **FCS** conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since Lee County is within the Fort Myers Division.

## GENERAL ALLEGATIONS

### MCLEOD

8.      **MCLEOD** began her employment with **FCS** on October 31, 2016 and was employed as **FCS**' Human Resources Manager on a fulltime basis.

9.      **MCLEOD** always performed her assigned duties in a professional manner and was very well qualified for her position.

10.     **MCLEOD** is a primary caregiver for her mother, who suffered a debilitating stroke.

11.     Beginning in November 2017, **MCLEOD** was approved for intermittent FMLA leave in order to care for her ailing mother.

2

12. Despite being approved for the intermittent FMLA leave, **MCLEOD** did not begin utilizing it until November 2018.

13. Beginning in November 2018, **MCLEOD** utilized approximately 5-days of intermittent FMLA leave.

14. On or about November 9, 2018, **MCLEOD** sent an email to her supervisor requesting reduced schedule under the FMLA leave whereby **MCLEOD** would work on Mondays, Tuesday, Thursdays and Fridays, but would have Wednesdays off in order to care for her mother. **FCS** approved the request and **MCLEOD** took Wednesdays off.

15. **FCS** began to retaliate almost immediately by not inviting her to meetings and targeting **MCLEOD** under the auspices of poor performance by blaming her for issue within the human resources department where a procedural error was made by someone else which predated her responsibility of that issue.

16. **FCS** had been fraudulently completing I-9s.

17. More specifically, **FCS** had been having HR assistants fraudulently sign I-9s on behalf of managers, which is against the law because I-9s must be signed by the individual who views the documents.

18. This was unbeknownst to **MCLEOD** and **LOMELI**, who were not responsible for the oversight of I-9s within **FCS** at that time.

19. When she learned of this practice, **MCLEOD** immediately sent an objection to the same in writing to **FCS**. This occurred on or about November 14, 2018.

20. **MCLEOD**'s supervisor responded to **MCLEOD**'s email by acknowledging the illegality of the practice in a text message.

21. Subsequent thereto, **FCS** convened a management meeting where a "solution" to the I-9 fraud was announced.

22. That "solution," however, did not resolve the illegality and did not bring **FCS** into compliance with the law.

23. **MCLEOD** discovered this about one week later and promptly informed her supervisor of the same.

24. **MCLEOD**'s supervisor, however, ignored **MCLEOD**'s report under after Thanksgiving, at which time her supervisor stripped **MCLEOD** of her leadership responsibilities.

25. From there, **MCLEOD**'s supervisor issued **MCLEOD** almost daily criticism until **FCS** terminated **MCLEOD** on December 21, 2018.

26. During this time period **MCLEOD** reported and objected to the I-9 fraud, she was also on reduced schedule FMLA leave.

27. Her supervisor even told her that her duties were being stripped of her because "you're too busy taking care of your mom."

28. **FCS** has a policy of retaliating against those that take FMLA leave. As but one example amongst many, CEO Brad Prechtl has announced a policy of refusing to pay bonuses to employees who are on FMLA leave.

**LOMELI**

29. **LOMELI** began her employment with **FCS** in or about November 2017 and was employed as **FCS**' "Associate HR Business Partner" on a fulltime basis.

30. **LOMELI** always performed her assigned duties in a professional manner and was very well qualified for her position. **FCS** gave **LOMELI** a Christmas bonus in December 2018 because of her performance.

31. However, on or about December ___, 2018, **LOMELI** concluded an investigation into possible Title VII violations by **FCS**' Director of Revenue Cycle, Melissa Chandler.

32. Through her investigation, **LOMELI** found that Chandler, who was **LOMELI**'s superior but who was not in her supervisory chain of command, indeed committed serious Title VII violations by repeatedly making disparaging remarks about employees' races and national origins.

33. As part of her written report, **LOMELI** found that Chandler violated Title VII and that she should be terminated due to the seriousness of the substantiated allegations.

34. Almost immediately upon issuing her written report, **LOMELI** was removed as leader of her team and was reassigned.

35. Thereafter, **LOMELI** sent **FCS** a written objection to an unsafe workplace as the only method **FCS** had for disposing of sharps was the garbage. **FCS** did not maintain any safe method to allow employees to dispose of sharps, such as needles, which posed a substantial risk of bodily harm due to bloodborne pathogens should an employee become stuck by a used sharp.

36. Just days prior to her termination, **LOMELI** sent an email to **FCS** advising that **FCS** was still in violation of the law and that it needed to get in compliance with the law.

37. **FCS** terminated **LOMELI** on February 13, 2019.

38. **FCS** then presented **LOMELI** with a general release that it asked her to sign, which she declined.

### COUNT I – VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT ("FMLA")- INTERFERENCE (MCLEOD)

39. The Plaintiff hereby incorporates by reference Paragraphs 1-2 and 4-28 in this Count by reference as though fully set forth below.

40. **MCLEOD** qualified for FMLA leave under 29 U.S.C. § 2611(11); 29 CFR §§ 825.113(a); 825.800 since she needed leave to care for her mother, who suffered from a serious health condition, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider and **MCLEOD** worked more than 1,250 hours in the preceding 12 months of employment with the **FCS**.

41. **MCLEOD** informed the **FCS** of her need for leave due to her mother's serious health condition.

42. **FCS** was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after it has enough information to make that determination, such as when it receives medical certification.

43. If **FCS** were to have decided that **MCLEOD**'s expected absence was not FMLA-qualifying, it must have notified her of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

44. **FCS** has never provided **MCLEOD** with any notice disqualifying her FMLA leave.

45. In fact, **FCS** determined that **MCLEOD** was eligible for leave under the FMLA but then terminated her employment because of her request for federally protected medical leave.

46. **MCLEOD** engaged in activity protected by the **FMLA** when she requested and took leave due to her mother's serious health conditions, consistently informing the **FCS** of the same.

47. **FCS** knew, or should have known, that **MCLEOD** was exercising her rights under the FMLA and was aware of **MCLEOD**'s need for FMLA-protected absence.

48. **MCLEOD** complied with all of the notice and due diligence requirements of the FMLA.

49. **FCS** was obligated to provide **MCLEOD**, an employee who requested FMLA leave, up to 12 weeks of unpaid leave and then reinstatement to her former position or an equivalent position with the same pay, benefits, and working conditions when he returns to work under 29 U.S.C. § 2614(a)(1); 29 CFR § 825.215(a).

50. **FCS** failed to grant leave and to return **MCLEOD** to her former position or an equivalent position in violation of the FMLA.

51. A causal connection exists between **MCLEOD**'s request for FMLA-protected leave and her termination from employment with the **FCS**.

52. **FCS** engaged in willful retaliation in violation of the FMLA by terminating **MCLEOD** 's employment because she engaged in activity protected by the FMLA.

53. As a result of the above-described violations of FMLA, **MCLEOD** has been damaged by **FCS** in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

### COUNT II – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT ("FMLA")- RETALIATION (MCLEOD)

54. The Plaintiff hereby incorporates by reference Paragraphs 1-2, 4-28 and 40-52 in this Count by reference as though fully set forth below.

55. **MCLEOD** engaged in activity protected by the FMLA when she requested leave due to her serious health condition, consistently informing the **FCS** of the same verbally and in writing, and when she demanded reinstatement.

56. **FCS** knew, or should have known, that **MCLEOD** was exercising her rights under the FMLA and was aware of **MCLEOD**'s need for FMLA-protected absence.

57. A causal connection exists between **MCLEOD** 's request for FMLA-protected leave and her termination from employment with **FCS** because **MCLEOD** engaged in statutorily protected activity by requesting, taking and demanding reinstatement from FMLA leave.

58. **FCS** retaliated by altering the terms and conditions of **MCLEOD**'s employment by refusing to return her to work, thereby terminating **MCLEOD**'s employment because she engaged in the statutorily protected activity of requesting, taking and demanding reinstatement from FMLA leave. The **FCS** refused to return **MCLEOD** to work because **MCLEOD** requested and took FMLA leave and terminated her because she engaged in this statutorily protected activity.

59. **FCS** engaged in willful and intentional retaliation in violation of the FMLA by terminating **MCLEOD**'s employment because she engaged in activity protected by the FMLA.

60. As a result of the above-described violations of FMLA, **MCLEOD** has been damaged by **FCS** in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate,

and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

### COUNT III –VIOLATION OF FLORIDA STATUTE 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT (BOTH PLAINTIFFS)

61. Plaintiff incorporates by reference Paragraphs 1-38 of this Complaint as though fully set forth below.

62. The Plaintiffs were employees of **FCS**, a private company.

63. At all material times, the Plaintiffs were to be protected from negative employment action by Florida Statute 448.102(1)-(3), commonly known as Florida's "whistleblower statute," which in relevant part provides:

> "An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice;
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer, and;
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

64. The Plaintiffs did engage in statutorily protected activity under F.S. §448(1) and (3).

65. Immediately after engaging in statutorily protected activity, the Plaintiffs suffered negative employment action, their respective terminations, which are a direct result of their statutorily protected activity.

66. The Plaintiffs' terminations and their engaging in statutorily protected activity are causally related.

67. **FCS** knew that the Plaintiffs were engaged in protected conduct as referenced herein.

68. **FCS** discharged, terminated, demoted, suspended, threatened, disciplined and harassed the Plaintiffs from their employment, and otherwise retaliated against them because of their protected conduct.

69. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, the Plaintiffs have lost all of the benefits and privileges of their employment and has been substantially and significantly injured in their career paths that was anticipated from their employment.

70. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against them, the Plaintiffs are entitled to all relief necessary to make them whole.

71. **FCS'** negative employment actions against the Plaintiffs continued until their termination and this count is timely filed.

**WHEREFORE,** Plaintiffs demand damages against Defendant for violation of Florida's Private Sector Whistle-blower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

(a) an injunction restraining continued violation of this act,

(b) reinstatement of the employees to the same positions they held before the retaliatory personnel action or to an equivalent position, or awarding front pay,

(c) reinstatement of full fringe benefits and seniority rights,

(d) compensation for lost wages, benefits, and other remuneration,

(e) any other compensatory damages allowable at law,

(f) attorney's fees, court costs and expenses, and

(g) such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

**NOW COME** the Plaintiffs, by and through their undersigned attorneys, and demand a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: April 23, 2019

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiffs
YORMAK EMPLOYMENT & DISABILITY LAW
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

**s/ Benjamin H. Yormak**
Benjamin H. Yormak